UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| CHARIOT CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-04013-SLD-JEH |
| | ) | |
| OFFICER SWANSON, OFFICER SAGE, | ) | |
| LISA ZIMMERMAN, ELENA | ) | |
| RODRIGUEZ, KIM DUTTON, JORDAN | ) | |
| TIMMONS, MISTY LAMPLEY, | ) | |
| SHANNON BLIND,[1] OFFICER | ) | |
| SWEENEY, OFFICER OLINGER, | ) | |
| OFFICER WILLIAMS, OFFICER LEWIS, | ) | |
| JESSICA VOTAVA, GALESBURG | ) | |
| POLICE DEPARTMENT, LUTHERAN | ) | |
| SOCIAL SERVICES OF ILLINOIS,[2] | ) | |
| ILLINOIS DEPARTMENT OF CHILDREN | ) | |
| AND FAMILY SERVICES,[3] and | ) | |
| CHILDREN'S HOME ASSOCIATION OF | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are *pro se* Plaintiff Chariot Campbell's motion for default summary

judgment ("First Motion for Default Summary Judgment"), ECF No. 11; Plaintiff's addendum to

the First Motion for Default Summary Judgment ("Addendum"), ECF No. 12; Plaintiff's

subsequent motion for default summary judgment ("Second Motion for Default Summary

---

[1] The complaint refers to this Defendant as "Shannon (Lutheran)." Compl. 1, ECF No. 1. Attorney James L. Sipchen entered an appearance of behalf of Shannon Blind, stating that she had been incorrectly sued as "Shannon (Lutheran)." *See* Sipchen Not. Appearance, ECF No. 24.
[2] The complaint refers to this party as "Lutheran Social Services." Compl. 1. Attorney Sipchen entered an appearance on behalf of Lutheran Social Services of Illinois, indicating that this is the full name of the party. *See* Sipchen Not. Appearance.
[3] The complaint refers to this party as "Dept. Child & Family Services." Compl. 10. Attorney Barbara L. Greenspan entered an appearance on behalf of Illinois Department of Children and Family Services, indicating that this is the full name of the party. Greenspan Not. Appearance, ECF No. 8.

Judgment"), ECF No. 13; Defendants Officer Lewis, Officer Olinger, and Officer Swanson's (collectively, "Officer Defendants") motion to dismiss for improper service ("Officers' Motion to Dismiss"), ECF No. 15; Defendants Illinois Department of Children and Family Services ("DCFS"), Lisa Zimmerman, and Misty Lampley's (collectively, "DCFS Defendants") motion to dismiss ("DCFS Motion to Dismiss"), ECF No. 19; and Defendants Lutheran Social Services of Illinois ("LSSI"), Shannon Blind, Elena Rodriguez, Jordan Timmons, and Kim Dutton's (collectively, "LSSI Defendants") motion to dismiss ("LSSI Motion to Dismiss"), ECF No. 27. For the following reasons, the First Motion for Default Summary Judgment is DENIED; the Addendum, construed as a motion to supplement the First Motion for Default Summary Judgment, is GRANTED; the Second Motion for Default Summary Judgment is DENIED; the Officers' Motion to Dismiss is DENIED; the DCFS Motion to Dismiss is GRANTED; and the LSSI Motion to Dismiss is GRANTED.

## BACKGROUND[4]

Plaintiff has four children, the older two with Travis Walker and the younger two with Tim Davis. She and Davis lived together with the four children, although the children frequently stayed with Plaintiff's parents. On January 1, 2021, Officer Swanson of the Galesburg Police Department ("GPD") arrived at Plaintiff's house and asked to go inside to see whether the power

---

[4] When reviewing a motion to dismiss, the Court "accept[s] all facts alleged in the complaint as true and draw[s] all reasonable inferences from those facts in favor of the plaintiff." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). The factual background is therefore drawn from the complaint, ECF No. 1. Under Federal Rule of Civil Procedure 15(a)(1), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or . . . 21 days after service of a motion under Rule 12(b), (e), or (f)." On July 12, 2022, Plaintiff filed a memorandum of law in support of her complaint, ECF No 10. This was filed more than 21 days after the complaint was filed and does not otherwise fall under Rule 15(a)(1), so the Court will not consider it. On July 26, 2022 and August 1, 2022, Plaintiff filed what she labeled "exhibits" to her complaint. *See* Exs. Letter, ECF No. 17; Numbered List of Exs. of Evid., ECF No. 18. These were filed within 21 days of the filing of the Officers' Motion to Dismiss, so the Court will consider them properly filed. Because they are labeled exhibits to the complaint, the Court will consider them supplements to, rather than replacements of, the complaint. Thus, the Court will also draw factual background information from these exhibits.

and water were working.  While Swanson was in the house, Plaintiff told him that Davis was abusive towards her and attempted to show him messages as evidence of the abuse.  Swanson refused to look at the messages and left the house.  After, he "wrote a biased report" stating that Plaintiff was "uncooperative and that [she] did not care about [her] home responsibilities." Compl. 16, ECF No. 1[5] (quotation marks omitted).  The report also included "several lies" that Davis had told to Swanson, such as that Plaintiff was a prostitute and that she "refuse[d] to do anything for [her] kids or home." *Id*.  Swanson sent this report to DCFS, and DCFS used the report to open an investigation into Plaintiff.

On January 4, 2021, Lisa Zimmerman, a caseworker with DCFS, came to Plaintiff's house and asked to speak with Davis.  Plaintiff told her about the abuse and threats she had been receiving from Davis, but Zimmerman did not seem to care.  Zimmerman interviewed Davis outside the house.  Davis returned to the house shortly after, and he got into a fight with Plaintiff. Zimmerman, who was still outside, called the GPD because she could not get back in the house, and the police removed Davis from the house.  Zimmerman refused to interview Plaintiff, "falsely alleging [she] was drunk." *Id*.

The next day, Zimmerman returned to the house.  Plaintiff had cleaned the house overnight, and Zimmerman "remarked how pleased she was" by this. *Id*. at 17.  Zimmerman conducted an interview with Plaintiff and neither "exhibited nor expressed any concerns with [Plaintiff's] home and . . . seemed to be pleased with the answers [Plaintiff] provided." *Id*. Towards the end of the interview, Zimmerman said that she wanted Plaintiff to accept her recommended services of "AA" and counseling. *Id*. (quotation marks omitted).  Plaintiff said no,

---

[5] The pages in the complaint are not consecutively paginated, so the Court uses the page numbers generated by CM/ECF.

and Zimmerman's "demeanor shifted negatively." *Id*. Zimmerman said that she needed to speak with her supervisor about what would happen next.

On January 15, 2021, Zimmerman called Plaintiff to tell her that she was adding medical neglect to Plaintiff's "list of charges"; Plaintiff had not previously been informed that she had charges against her. *Id*. (quotation marks omitted). The two spoke a few other times on the phone, during which Zimmerman did not express any other concerns with Plaintiff. Zimmerman later wrote a report in which she listed some concerns with Plaintiff. The report did not include information Plaintiff had given her regarding crimes perpetrated against Plaintiff and her children. Zimmerman ignored many of Plaintiff's calls for a period of several months. Plaintiff contacted Misty Lampley, Zimmerman's supervisor at DCFS, at one point in January 2021 because of Zimmerman's refusal to respond to her calls. Plaintiff told her that she had "tangible evidence . . . that [she] believed [Zimmerman] to be working against [her]." *Id*. at 21. Lampley responded that Plaintiff had to resolve her issues directly with Zimmerman. Lampley then denied Plaintiff's request for a new caseworker.

On February 24, 2021, Walker went to Plaintiff's parents' house, where the children had been staying, and forcefully removed the older two children. An order of protection had been entered against Plaintiff, affecting her ability to see her children, and Walker apparently believed the order granted him permission to remove his children from Plaintiff's parents' house. Officer Sweeney of the GPD "stood by and watched [Plaintiff's] kids be illegally and forcefully removed from the physical custody of [her] parents." *Id*. at 22. Officer Olinger was also there and filed a falsified report stating that he did not know the whereabouts of one of Plaintiff's older children, although he had observed Walker depart with both children. Officer Sweeney permitted this falsified report to be filed.

On or about March 5, 2021, Zimmerman came back to Plaintiff's house and introduced her to Jordan Timmons, a caseworker with LSSI, who was to be Plaintiff's new caseworker. Both Timmons and Zimmerman said they would look into what legal actions could be taken regarding the order of protection. When Timmons returned for a second visit, she said that nothing could be done about the order until it expired in 2025. Plaintiff later found out that this was a lie and that had she contested the order within thirty days of its entry, she could have gotten the order terminated. Timmons generally was not able to provide answers to any of Plaintiff's questions about her case, and she refused to help Plaintiff with the "multiple crimes" Plaintiff reported to her between March 2021 and July 2021. *Id.* at 21. Eventually, in early May 2021, Timmons's supervisor, Shannon Blind, called Plaintiff and told her that Timmons had reported that Plaintiff was harassing her and that Plaintiff should leave Timmons alone. Plaintiff responded that she no longer wished to cooperate with LSSI. On or about May 14, 2021, Timmons asked the police to perform a well-being check on Plaintiff because she had not heard from Plaintiff in a week. Plaintiff attempted to call Timmons, and when Timmons finally responded, she said that "she felt [they] needed a break." *Id.*

A few days later, Blind called Plaintiff and said that she and Timmons were going to help Plaintiff get visits with her two oldest children. However, on or about May 24, 2021, Timmons informed Plaintiff that she was not going to get these visits because she was "being accused of taking nude pictures of [her] daughter . . . and of prostituting [her] child" even though her daughter had been living in Peoria with Walker since February 24, 2021. *Id.* at 20. Plaintiff never heard from Blind again and accuses her of being derelict and negligent in her duties. Timmons continued to do nothing to assist Plaintiff with ongoing problems with Davis and Walker, and Plaintiff did not hear from Timmons again after July 2021.

In late July 2021, Jessica Votava, a foster care caseworker with the Children's Home Association of Illinois, called Plaintiff and asked if her children could reside with her parents. Votava asked for her parents' social security numbers in order to run a background check. A few days later, Votava called and said that Plaintiff's children could stay with her parents and that it would become official in court the following week. However, at the court hearing, Votava told the judge that she had not been able to speak with Plaintiff's parents before the hearing and did not know if the children were there, so an Amber Alert was placed for the children. Votava told Plaintiff that to terminate the Amber Alert, a police officer just had to go to the house and physically see the children there. However, the following day, her children were removed from her parents' house by the Peoria Department of Children and Family Services, and Votava told Plaintiff that she could not help her.

In September 2021, Elena Rodriguez, a caseworker from LSSI, came to Plaintiff's home and introduced herself as Plaintiff's new caseworker. Rodriguez promised to help Plaintiff get her issues resolved and get her two oldest children back home. However, in October 2021, when Plaintiff called Rodriguez, Rodriguez told her that she and her supervisor, Kim Dutton, had determined that Rodriguez was not Plaintiff's caseworker. The following week, there was a court hearing in a case Plaintiff had filed against Walker. She subpoenaed Rodriguez, but Rodriguez lied in court by telling the judge that Plaintiff was involved in a DCFS case involving Walker and Plaintiff's oldest two children. During another court hearing on December 22, 2021, Rodriguez's attorney claimed that Plaintiff had been harassing Rodriguez, which Plaintiff states was a "lie." *Id*. at 18. In actuality, Rodriguez had been refusing to answer questions Plaintiff asked her over text and phone calls.

The order of protection was still in place against Plaintiff, and Plaintiff succeeded in getting it modified on her own.  As the order had been what was keeping her from seeing her children, once the modification took place, Plaintiff arranged with Rodriguez to visit with the children on Saturdays for four hours.  These visits took place four times between December 3, 2021 and January 1, 2022.  At a court hearing on January 6, 2022, the judge terminated the order of protection; Rodriguez had been subpoenaed but had failed to show up.  The following day, Rodriguez told Plaintiff that she could no longer have visits with her children because she was "unstable."  *Id*. at 19.  Plaintiff has not heard from Rodriguez since.  She accuses Rodriguez of "operat[ing] as a spy in collussion [sic] and conspiracy against the well-being of [her] and [her] children in an effort to gather information from [her] about [her] 'lawsuit' against her colleagues and associates, in order to help these previous wrong-doers to cover up their aggregous [sic] misconduct."  *Id*. at 3.  Plaintiff also alleges that Dutton was derelict in her duties, as she made false promises to Plaintiff to give her answers to certain questions and then failed to divulge this information; she also failed to make sure that Rodriguez was conducting herself appropriately.

Several other officers of the GPD also took actions against Plaintiff.  In early February 2021, Officer Williams came to Plaintiff's house to assist her after Davis posted nude photographs of her to her Facebook page.  Officer Williams asked Plaintiff to send the photos to his email and promised to investigate the crime, but he did nothing.  Officer Lewis "racially profiled" Plaintiff and followed her in his car for two full minutes before putting his flashing lights on.  *Id*. at 22.  Because she felt unsafe, she drove to her driveway, where she got out of the car.  Officer Lewis drew his weapon and aimed it at Plaintiff's head; he "use[d] excessive force." *Id*.

During the relevant time period, Plaintiff attempted to get help from the GPD on numerous occasions to no avail.  She generally alleges that the GPD "has allowed widespread corruption to take place as their official members operate against society."  *Id*. at 22.  She also generally alleges that DCFS "allowed multiple employees to get away with being derelict in their [d]uties," that LSSI "allowed multiple employees to get away with being blatantly derelict in their [d]uties," and that the Children's Home Association of Illinois "allowed . . . Votava to be blatantly derelict in her [d]uty, and has not reprimanded her for her misconduct or false-promises."  *Id*.

Plaintiff initiated this lawsuit against Officer Swanson, Officer Olinger, Officer Williams, Officer Sweeney, Officer Lewis, Officer Sage, the GPD, DCFS, Zimmerman, Lampley, LSSI, Rodriguez, Dutton, Timmons, Blind, the Children's Home Association of Illinois, and Votava on January 21, 2022.  She brings claims pursuant to 42 U.S.C. § 1983.  *See* Compl. 1.  She filed the exhibits to the complaint, which the Court construes as supplements to the complaint, *see supra* n.4, on July 26, 2022 and August 1, 2022.[6]

## DISCUSSION

### I.    Motions for Default Summary Judgment

Plaintiff has filed three documents related to what she terms a request for default summary judgment.  On July 19, 2022, she filed the First Motion for Default Summary Judgment.  This document is lengthy, and the precise nature of the relief Plaintiff seeks is not immediately apparent; for example, she asks "for sanction in the form of Petition For Summary Judgment, Temporary Relief, Default Judgment and general legal protection from these defendants that have abridged and obstructed the Rights of [her] and [her] four children" and to

---

[6] The Court notes that these exhibits total nearly 1,000 pages.

"allow for the return of all four of [her] children while the case interim and other proceedings . . . are still underway."  First Mot. Default Summ. J. 1.  None of these requests identify the legal basis for the request or the rule under which it is brought, as required by the Local Rules.  *See* Civil LR 7.1(B)(1) ("Every motion raising a question of law . . . must include a memorandum of law including a brief statement of the specific points or propositions of law and supporting authorities upon which the moving party relies, and identifying the Rule under which the motion is filed."); *see Pearl Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) ("[P]ro se litigants are not excused from compliance with procedural rules.").[7]  However, based on the final paragraph of the document, the Court believes that Plaintiff's central request is for the entry of default pursuant to Federal Rule of Civil Procedure 55 against DCFS, Rodriguez, Timmons, Dutton, Zimmerman, Lampley, LSSI, Officer Lewis, Officer Olinger, Officer Swanson, and the GPD because of their failure to answer her complaint by the deadline.  *See* First Mot. Default Summ. J. 49.[8]

Next, on July 21, 2022, Plaintiff filed the Addendum, which the Court construes as a motion to supplement the First Motion for Default Summary Judgment.  *See* Addendum 1 (titling the motion as "Addendum to Motion Filed 07.18.22; additional claims" and stating that the contents of the motion are "in addition to the previously submitted Petition for Motion for Default Summary Judgement").  So construed, the Court grants the Addendum and will consider the material in the Addendum as part of the First Motion for Default Summary Judgment.

---

[7] The First Motion for Default Summary Judgment does contain, at intervals, paragraphs containing strings of citations to Illinois statutes, federal statutes, and constitutional provisions.  *See, e.g.*, First Mot. Default Summ. J. 2–3.  The Court finds the meaning of these clumps of citations—by and large unconnected to specific requests for relief or factual statements—indecipherable, and they do not aid the Court in any way in discerning the basis for Plaintiff's requests for relief.

[8] The motion requests default judgment, *see* First Mot. Default Summ. J. 1, but default, which is a necessary step before default judgment, has not been entered yet.  *See Virgin Records Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 965 (N.D. Ind. 2006) ("Entry of default must precede an entry of default judgment.").

Finally, on July 22, 2022, Plaintiff filed the Second Motion for Default Summary Judgment.  The text and requests of the Second Motion for Default Summary Judgment appear to be essentially identical to that of the First Motion for Default Summary Judgment.  *Compare* Second Mot. Default Summ. J. 1–48 *with* First Mot. Default Summ. J. 1–49.  The Court will thus consider these two motions in tandem.

Entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  A defendant must file an answer within 21 days after being served or within 14 days after a Rule 12 motion is denied; any Rule 12 motion must be brought before the deadline for responsive pleadings.  *See id*. 12(a), (b).  Plaintiff argues that as none of these Defendants have filed an answer by the deadline, default is appropriate.  *See* First Mot. Default Summ. J. 49; Second Mot. Default Summ. J. 48.

According to the Summonses Returned Executed by Plaintiff on July 8, 2022, Officer Lewis, Officer Olinger, Officer Swanson, and the GPD were served on June 13, 2022, with their answers due July 5, 2022, and DCFS, Rodriguez, Timmons, Dutton, Zimmerman, Lampley, and LSSI were served on June 15, 2022, with their answers due July 6, 2022.  *See* Lewis Summons Returned Executed, ECF No. 6 at 17–18; Olinger Summons Returned Executed, ECF No. 6 at 21–22; Swanson Summons Returned Executed, ECF No. 6 at 23–24; GPD Summons Returned Executed, ECF No. 6 at 19–20; DCFS Summons Returned Executed, ECF No. 6 at 5–6; Rodriguez Summons Returned Executed, ECF No. 6 at 7–8; Timmons Summons Returned Executed, ECF No. 6 at 9–10; Dutton Summons Returned Executed, ECF No. 6 at 11–12; Zimmerman Summons Returned Executed, ECF No. 6 at 1–2; Lampley Summons Returned Executed, ECF No. 6 at 3–4; LSSI Summons Returned Executed, ECF No. 6 at 15–16.

Plaintiff is correct that none of these Defendant filed an answer or Rule 12(b) motion by those deadlines.  However, several Defendants later sought and then received extensions of time to file answers or motions to dismiss from the Court.  On July 12, 2022, DCFS, Zimmerman, and Lampley moved for an extension of time to file an answer or otherwise plead, DCFS Mot. Extension Time, ECF No. 9, which the Court granted, July 13, 2022 Text Order (extending the time for DCFS, Zimmerman, and Lampley to answer or otherwise plead to August 9, 2022).  The DCFS Motion to Dismiss was filed by that new deadline.  On September 19, 2022, Rodriguez, Timmons, Dutton, LSSI, and Blind filed a motion for an extension of time to respond to the complaint, LSSI Mot. Extension Time, ECF No. 25, which the Court granted, Sept. 20, 2022 Text Order (extending the deadline for these Defendants to file an answer to November 3, 2022). The LSSI Motion to Dismiss was on file by the new deadline.  *See* LSSI Mot. Dismiss.  Because DCFS, Zimmerman, Lampley, Rodriguez, Timmons, Dutton, LSSI, and Blind filed their Rule 12 motions before the new deadlines set by the Court, entry of default against these Defendants is not appropriate.

The GPD and the Officer Defendants did not move for an extension of time to answer or otherwise plead.  Thus, the Court will proceed to determining whether entry of default is appropriate against these Defendants.  "A party who moves for entry of default under Rule 55(a) has the burden of showing that service of process was proper[l]y effected consistent with Rule 4 of the Federal Rules of Civil Procedure." *Williams v. Kessler*, CAUSE NO.: 2:17-CV-161-JPK, 2019 WL 1762957, at *2 (N.D. Ind. Apr. 19, 2019) (quotation marks omitted).  "If the moving party is unable to show proper service or that proper service was waived, the party should not be granted entry of default." *Id.* (quotation marks omitted).  The Officer Defendants have filed a motion to dismiss for improper service, *see* Officers' Mot. Dismiss, and, as discussed below, the

Court finds that service on them was not proper, *see infra* Section II.  As such, entry of default against them is not warranted.

The GPD has not filed a motion to dismiss for lack of proper service, but the Court nevertheless finds that Plaintiff has failed to show that service was properly effected.  First, the Court notes that the GPD should actually be sued as the City of Galesburg.  Pursuant to Federal Rule of Civil Procedure 17(b)(3), where a party is neither an individual nor a corporation, the capacity of the party to sue or be sued is determined "by the law of the state where the court is located."  "It is well-established in Illinois that a police department is not a suable entity, even regarding claims arising under § 1983."  *Lalowski v. City of Des Plaines*, No. 08 C 3780, 2010 WL 145860, at *2 (N.D. Ill. Jan. 8, 2010).  Rather, "[p]olice departments are departments of the municipalities they serve; they do not have distinct legal existences under Illinois law," and the municipality should therefore be sued instead.  *See Hall v. Vill. of Flossmoor Police Dep't*, No. 11-CV-5283, 2012 WL 379902, at *2 (N.D. Ill. Feb. 1, 2012).  The Clerk is directed to replace "Galesburg Police Department" as a party with "City of Galesburg."

To serve a municipality, a copy of the summons and complaint must be delivered to its chief executive officer or served "in the manner prescribed by . . . state[] law."  Fed. R. Civ. P. 4(j)(2).  In Illinois, a city is considered a municipality, 65 ILCS 5/1-1-2(1), and a city may be served by leaving a copy of the summons with the mayor of the city or the city clerk, 735 ILCS 5/2-211.  "Generally, the filing of a properly executed return of service is prima facie evidence of effective service."  *Esquivel v. Doc Able's Auto Clinic, Inc*., No. 15 C 8141, 2016 WL 1463768, at *2 (N.D. Ill. Apr. 14, 2016).  The GPD Summons Returned Executed was directed to Chief Russ Idle of the GPD at 150 S. Broad St., Galesburg, IL 61401, and the summons was left with Kay Nolan in Records at that address.  *See* GPD Summons Returned Executed.  Given that the

summons was directed to the GPD Chief of Police and was ultimately served on Kay Nolan in Records at what is presumably the GPD's address, it does not appear from the face of the Summons Returned Executed that a proper person was served on behalf of the GPD. And Plaintiff has put forth nothing to show that the GPD was properly served, as is her burden. *See Kessler*, 2019 WL 1762957, at *2. The Court therefore will not enter default against the GPD.

Because entry of default is not appropriate against DCFS, Zimmerman, Lampley, Rodriguez, Timmons, Dutton, LSSI, Blind, the GPD, or the Officer Defendants, Plaintiff's First Motion for Default Summary Judgment and Second Motion for Default Summary Judgment are DENIED.

## II.    Officers' Motion to Dismiss

Officers Lewis, Olinger, and Swanson move to dismiss the complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(5) or, in the alternative, to quash service, asserting that none of them have been properly served. Mem. Supp. Officers' Mot. Dismiss 1–2, ECF No. 15-1. Plaintiff has not responded to this motion to date. *See* Civil LR 7.1(B)(2) ("If no response is timely filed, the presiding judge will presume there is no opposition to the motion and may rule without further notice to the parties.").

A plaintiff is responsible for ensuring that the summons and complaint are served on a defendant within the allotted time. Fed. R. Civ. P. 4(c)(1). "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id*. 4(m). A defendant may file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) to enforce the service of process requirements. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). "The plaintiff bears the

burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Id.*

The Summonses Returned Executed purporting to show service on Officers Lewis, Olinger, and Swanson indicate that service was made on Kay Nolan in Records at 150 S. Broad Street, Galesburg, IL 61401. *See* Lewis Summons Returned Executed; Olinger Summons Returned Executed; Swanson Summons Returned Executed. According to the Officer Defendants, this is the address of Galesburg's Public Safety Building, at which none of them reside. Mem. Supp. Officers' Mot. Dismiss 1. The Officer Defendants further state that they have not received service in any other manner. *Id.* at 3.

An individual defendant may be served by delivering the summons and complaint to the individual personally, leaving copies at the individual's usual place of abode with a suitable person who resides there, delivering copies to an agent authorized to receive service of process, or following the service rules of the state where the district court is located or where service is made. Fed. R. Civ. P. 4(e). Illinois law provides that service may be made on an individual by delivering the summons and complaint to the individual personally or by leaving copies at the individual's usual place of abode with a suitable resident and mailing a copy of the summons addressed to the individual at his usual place of abode. 735 ILCS 5/2-203(a). Notably, service on a person other than the individual defendant at the defendant's place of work is not a proper method of service. The summonses were served on Nolan, not the actual Officer Defendants, at the Galesburg Public Safety Building, not any of the Officer Defendants' home addresses. *See* Lewis Summons Returned Executed; Olinger Summons Returned Executed; Swanson Summons Returned Executed. Because the service made was not of a type sanctioned by Rule 4(e) or by 735 ILCS 5/2-203(a), service on Officers Lewis, Olinger, and Swanson was not proper.

A final question is whether to grant the Officer Defendants' motion to dismiss or to merely quash service and permit Plaintiff additional time to serve them.  "[T]he decision of whether to dismiss or extend the period for service is inherently discretionary."  *Cardenas*, 646 F.3d at 1005; *see Troxell v. Fedders of N. Am., Inc*., 160 F.3d 381, 383 (7th Cir. 1998) ("Even if a plaintiff does not establish good cause, the district court may in its discretion grant an extension of time for service.").  However, upon a showing of good cause by the plaintiff, "the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  The Court acknowledges that Plaintiff did not respond to the Officers' Motion to Dismiss.  Nevertheless, mindful of the fact that Plaintiff is proceeding *pro se*, the Court will give Plaintiff additional time to effectuate proper service on the Officer Defendants.  *See Simmons v. Parkinson*, Case No. 1:19-cv-01231-SLD-JEH, 2021 WL 4494605, *4 (C.D. Ill. Sept. 30, 2021) (denying a motion to dismiss under Rule 12(b)(5) and extending the service deadline in part because of the plaintiff's *pro se* status).  The deadline for service of the summons and complaint on Officers Lewis, Olinger, and Swanson is extended to May 30, 2023.  As such, service is quashed, and the Officers' Motion to Dismiss is DENIED.

### III.    DCFS Motion to Dismiss

Plaintiff brings claims against the DCFS Defendants pursuant to § 1983.  *See* Compl. 1.  DCFS, Zimmerman, and Lampley move to dismiss the claims against them, arguing that all claims against DCFS and against Zimmerman and Lampley in their official capacities are barred by the Eleventh Amendment; *respondeat superior* liability is not available under § 1983 regarding Lampley's actions; Zimmerman and Lampley are entitled to qualified immunity; and Plaintiff has failed to state any constitutional claims.  *See* Mem. Supp. DCFS Mot. Dismiss 11–16, ECF No. 20.

### a. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding on a motion to dismiss, "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and the court must also "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### b. Analysis

#### i. Eleventh Amendment

The Court looks first to the DCFS Defendants' Eleventh Amendment argument. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S.

16

Const. amend. XI.  Courts have interpreted this to mean that private individuals cannot sue the state itself, state agencies, or state officials acting in their official capacities in federal court, a doctrine known as sovereign immunity.  *See Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012).  Three exceptions to sovereign immunity have been recognized: 1) Congressional abrogation, 2) waiver, and 3) the *Ex parte Young* exception.  *Id*. at 882.  The *Ex parte Young* exception "allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law."  *Id* (quotation marks omitted).  Because the exceptions to sovereign immunity are dependent upon the type and capacity of the defendant being sued, the Court will address each of the DCFS Defendants individually.

## 1.  DCFS

DCFS is a state agency.  *See, e.g*., *Darryl H. v. Coler*, 801 F.2d 893, 906 (7th Cir. 1986) ("The [Illinois] DCFS is a state agency; it was established by state statute and is funded by the state.").  As such, the claims against DCFS may only proceed before this Court if an exception to sovereign immunity applies.  Because DCFS is an agency and not a state official, the *Ex parte Young* exception is inapplicable; waiver and abrogation are the only possible exceptions.  For a state to waive its sovereign immunity defense, its consent to suit must be "unequivocally expressed," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); mere failure to raise a defense of sovereign immunity does not constitute waiver, nor can a state constructively consent to a suit, *Edelman v. Jordan*, 415 U.S. 651, 673, 677–78 (1974).  Nothing before the Court shows that the state has consented to suit; indeed, the DCFS Motion to Dismiss compels the opposite conclusion, *see* DCFS Mot. Dismiss 2.  And Plaintiff bring her claims pursuant to § 1983, Compl. 1, a statute which the Supreme Court has specifically found does not abrogate

state sovereign immunity, *see Quern v. Jordan*, 440 U.S. 332, 340–41 (1979).  As no exceptions

to sovereign immunity apply, the Court finds that the Eleventh Amendment bars this suit from

being brought against DCFS.  All claims against DCFS are dismissed.

### 2.   Zimmerman and Lampley in their Official Capacities

As noted above, the doctrine of sovereign immunity covers state officials acting in their

official capacities.  *See Quinn*, 680 F.3d at 881.  However, in *Ex parte Young*, 209 U.S. 123

(1908), the Supreme Court created an exception to sovereign immunity under which private

parties can sue state officers in their official capacities "to enjoin prospective action that would

violate federal law."  *Dean Foods Co. v. Brancel*, 187 F.3d 609, 613 (7th Cir. 1999).  As the *Ex

parte Young* exception "is necessarily limited to prospective injunctive relief," a suit brought in

federal court pursuant to the exception may not seek "a retroactive award which requires the

payment of funds from the state treasury."  *See Edelman*, 415 U.S. at 677; *see, e.g.*, *Ind. Prot. &

Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010) (finding that

the plaintiff's requested relief was prospective where it sought access to records that state

officials had denied them in violation of federal law).

Whether a plaintiff's desired relief is sufficiently prospective and injunctive turns on the

effect the relief would have on the state, not on the type of relief the plaintiff alleges he seeks.

*Quinn*, 680 F.3d at 883.  Claims which purport to be prospective in nature that would

nonetheless "impose[] upon the State a monetary loss resulting from a *past* breach of a legal duty

on the part of defendant state officials" are considered to be claims for monetary damages,

precluding use of the *Ex parte Young* exception.  *Ameritech Corp. v. McCann*, 297 F.3d 582, 587

(7th Cir. 2002).  However, where granting the plaintiff's requested injunctive relief would

merely have an ancillary implication upon the state treasury, the Eleventh Amendment will not bar the suit.  *Edelman*, 415 U.S. at 667–68.

In the complaint, Plaintiff states that she is seeking money damages from Zimmerman because Zimmerman allegedly tampered with evidence, left information out of her report, and failed to assist Plaintiff and her children; she does not identify any future relief she seeks from Zimmerman.  *See* Compl. 2.  Plaintiff claims that she is seeking injunctive relief from Lampley because Lampley "refused to help [her] resolve [her] ongoing issues with . . . Zimmerman regarding [Zimmerman's] seemingly inappropriate conduct and apparent neglect of duty" between January and February 2021.  *Id*. at 4.  Neither of these requests for relief can properly be characterized as prospective, so the *Ex parte Young* exception does not apply.  Nor do the other exceptions to sovereign immunity apply.  *See supra* Section III(b)(i)(1).  All claims against Zimmerman and Lampley in their official capacities are dismissed.

### ii.  Qualified Immunity

The Court turns next to whether Zimmerman and Lampley are entitled to qualified immunity for claims against them in their individual capacities.  Qualified immunity is intended to "protect[] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted).  To evaluate whether qualified immunity is warranted, courts engage in a two-part analysis, determining "(1) whether facts alleged or shown by a plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct."  *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019).  "If either inquiry is answered in the negative, the defendant official is protected by qualified

immunity." *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (emphasis omitted) (quotation marks omitted).  A right is clearly established when "[t]he contours of [a] right [are] sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alterations in original) (quotation marks omitted).  "[E]xisting precedent must have placed the statutory or constitutional question beyond debate," although "a case directly on point" is not necessary.  *Id.*  Alternatively, a party may "show[] that the violation was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue." *Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000).  "When attempting to defeat an assertion of qualified immunity, the burden is on the plaintiffs to show that a particular right is 'clearly established.'" *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019).

Because Zimmerman and Lampley are employees of a state agency, *see supra* Section III(b)(i), they may be entitled to qualified immunity.  Both steps of the qualified immunity analysis are addressed in turn.

### 1.  Violation of Constitutional Rights

In her complaint, Plaintiff does not point to particular constitutional rights she believes these Defendants violated, although she need not do so at the complaint stage.  *See Shah v. Inter-Cont'l Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) ("[In the complaint,] [t]he plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply.").[9]  The DCFS Defendants suggest that Plaintiff is attempting to

---

[9] In Plaintiff's response to the DCFS Motion to Dismiss—filed long after the deadline for responding had expired—she includes many string cites to various constitutional amendments and purported federal and state statutes.  *See, e.g.*, Resp. DCFS Mot. Dismiss 3–4, ECF No. 26 (arguing that Zimmerman violated a number of federal criminal statutes).  Many of these citations are in an incomprehensible format.  Others simply have no apparent connection to the facts at issue.  In the interest of judicial efficiency, the Court will only address legal claims that are reasonably related to the facts of this case.

allege violations of her Fourteenth Amendment due process rights and of her Fourth Amendment rights against unreasonable search and seizure.  *See* Mem. Supp. DCFS Mot. Dismiss 13–15. Having reviewed the complaint thoroughly, the Court has not discerned other realistic potential constitutional violations.  Thus, the Court will address whether Plaintiff has plausibly alleged that Zimmerman and Lampley violated her Fourteenth Amendment due process rights or her Fourth Amendment rights against unreasonable search and seizure.

### A. Fourteenth Amendment Due Process Rights

The due process clause of the Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  In the arena of child custody, a plaintiff may bring a claim for a violation of procedural due process for the failure to provide adequate process before a deprivation of custody or a violation of the substantive due process right to familial relations.  *See, e.g.*, *H.P. ex rel. Parker v. Kelley*, 586 F. Supp. 3d 844, 850–55 (S.D. Ill. 2022).

To allege a procedural due process claim, a plaintiff must first allege that the defendant "deprived the plaintiff of a protected liberty or property interest"; second, she must allege that she was not given the process due to her.  *See Brokaw*, 235 F.3d at 1020.  Plaintiff has a liberty interest in familial relations, *see id.*, of which she was allegedly deprived when she lost custody of some or all of her children, *see, e.g.*, Compl. 18–19.  While "the amount of process due varies with the particular situation," the "Supreme Court has said that parental rights cannot be denied without an 'opportunity for them to be heard at a meaningful time and in a meaningful manner.'" *Brokaw*, 235 F.3d at 1020 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  Due process requires, "at a minimum[,] . . . that government officials not misrepresent the facts in order to obtain the removal of a child from his parents."  *Id*.

Plaintiff's allegations against Zimmerman—and by extension, Lampley[10]—involve Zimmerman's alleged "tamper[ing] with evidence" and writing of a report which was "biased" and based on "fiction."  Compl. 17; *see also id*. at 2 ("[Zimmerman] . . . adds false details and often lies throughout her report.").  This suggests that Plaintiff intends to allege a procedural due process violation based on Zimmerman's falsification of her report.  But the complaint does not provide any detail as to how—or even if—these alleged falsehoods were connected to the loss of custody of her children.[11]  A complaint must provide enough detail such that the defendant has "fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (quotation marks omitted).  The lack of allegations explaining how Zimmerman's report led to any deprivation on Plaintiff's part means that the complaint fails to put the DCFS Defendants on notice of how they allegedly violated Plaintiff's procedural due process rights.  *Cf. Brokaw*, 235 F.3d at 1021 (finding that the plaintiff stated a claim for violation of procedural due process based on allegations that a child "was removed based on knowingly false statements of child neglect").

In contrast to procedural due process, "the concept of substantive due process prevents the state from taking certain actions even if it provides procedural safeguards."  *Gauder v.*

---

[10] The Court does not find that the lack of supervisory liability under § 1983 is a reason to dismiss the claims against Lampley.  "[U]nder § 1983, a plaintiff may not rely on the doctrine of respondeat superior to hold supervisory officials liable for the misconduct of their subordinates."  *Doyle v. Camelot Care Ctrs., Inc*., 305 F.3d 603, 614 (7th Cir. 2002).  "Rather, the supervisory officials also must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct."  *Id*. at 614–15.  Plaintiff alleges that she contacted Lampley to discuss Zimmerman's behavior and that Lampley refused to view evidence of Zimmerman allegedly working against Plaintiff and refused to assign Plaintiff a new caseworker.  *See* Compl. 4, 21.  As this suggests that Lampley consented to Zimmerman's actions, the Court considers this sufficient personal involvement under § 1983.

[11] Among the exhibits to the complaint filed by Plaintiff are several DCFS reports authored by Zimmerman, which Plaintiff has annotated with commentary on the context of the reports.  *See, e.g*., Jan. 4, 2021 Contact Note, ECF No. 18-9 at 10 (written annotation by Plaintiff stating, in regards to the content of the Contact Note, that "[t]his is not how this occurred"); Jan. 13, 2021 Contact Note, ECF No. 18-10 at 5 (written annotation by Plaintiff refuting statement in report that there were videos showing one of Plaintiff's children taking beer away from Plaintiff).  The Court presumes that these notes are meant to illuminate the alleged "lies" included by Zimmerman in her reports.

*Leckrone*, 366 F. Supp. 2d 780, 786 (W.D. Wis. 2005). "A family's right to remain together without the coercive interference of the awesome power of the state" is one aspect of substantive due process. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011) (quotation marks omitted). But this right is not absolute—it "must be balanced against the state's interest in protecting children from abuse." *Id*. (quotation marks omitted). "To achieve this balance, 'caseworkers must have some definite and articulable evidence giving rise to a reasonable suspicion of past or imminent danger of abuse before they may take a child into protective custody.'" *Kelley*, 586 F. Supp. 3d at 853 (quoting *Hernandez*, 657 F.3d at 478). Again, the complaint states that Zimmerman wrote several reports regarding Plaintiff and her children, but it does not contain any allegations that Zimmerman or Lampley were involved in taking Plaintiff's children into custody and thus does not state a claim for a violation of Plaintiff's substantive due process rights.

Plaintiff also alleges that Zimmerman neglected her duty to Plaintiff and her children by failing to include information regarding abuse at the hands of Walker and Davis in her report and "fail[ing] to assist [Plaintiff] or [her] kids with [their] actual crisis/problems." *See* Compl. 2, 4, 16–17. Such allegations do not support a claim for violation of due process. The due process clause is not "a guarantee of certain minimal levels of safety and security"—its language "cannot fairly be extended to impose an affirmative obligation on the State" to ensure that private actors do not deprive others of life, liberty, or property, *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989), unless the harmed individual is in the custody of the State, *see David B. v McDonald*, 156 F.3d 780, 783 (7th Cir. 1998). Failure to protect an individual against private violence does not constitute a violation of the due process clause. *See DeShaney*, 489 U.S. at 197. As Plaintiff does not allege that the harm she suffered occurred while in state

custody, she has failed to state a due process violation based on Zimmerman's failure to report

Walker and Davis's violence or otherwise solve Plaintiff's problems.

## B. Fourth Amendment Rights

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated." U.S. Const. amend. IV. These protections apply to child welfare workers, and a child

may be "seized" under the meaning of the Fourth Amendment when a reasonable person in the

child's shoes would believe that he was not free to leave. *See Doe v. Heck*, 327 F.3d 492, 509,

510 (7th Cir. 2003). Such a claim should generally be brought by or on behalf of the seized

child. *See id*. at 510–15 (analyzing whether the parents of a seized child stated a cognizable

Fourth Amendment claim on his behalf); *see Alderman v. United States*, 394 U.S. 165, 174

(1969) (noting "the general rule that Fourth Amendment rights are personal rights which, like

some other constitutional rights, may not be vicariously asserted").

Plaintiff generally takes issue with the removal of her children from her home, *see, e.g.*,

Compl. 18–19, which could be considered a "seizure" under the Fourth Amendment. But the

seizure must be related to the DCFS Defendants' individual actions, *see Doyle v. Camelot Care

Ctrs., Inc*., 305 F.3d 603, 614 (7th Cir. 2002) ("It is well-established that a plaintiff only may

bring a § 1983 claim against those individuals personally responsible for the constitutional

deprivation."), and Plaintiff does not connect any action taken directly by Zimmerman (much

less Lampley) to the actual removal of Plaintiff's children from her home. Nor does she bring

suit on behalf of her children. Thus, her allegations are insufficient to state that the DCFS

Defendants violated the Fourth Amendment rights of Plaintiff's children.

## 2.  Rights Clearly Established

Plaintiff has also not satisfied her burden to show that any rights she alleges were violated were clearly established.  It is Plaintiff's burden to refute a claim of qualified immunity by showing that the right was clearly established, *see Hardeman*, 933 F.3d at 820, and nowhere in her complaint, response, or other filings does she do so.  Thus, she has failed to show that qualified immunity is not warranted here.  The claims against Zimmerman and Lampley are dismissed based on qualified immunity.  As such, the DCFS Motion to Dismiss is granted.

## IV.    LSSI Motion to Dismiss

The LSSI Defendants move to dismiss all claims against them.  They contend that the Court should dismiss the claims against the LSSI Defendants under Rule 12(b)(6) because Plaintiff does not allege that the LSSI Defendants are state actors or that they deprived her of a constitutional or federal right, as required by § 1983.  *Id*. at 12–16.  They further argue that Plaintiff has not alleged a *Monell* claim against LSSI and that LSSI caseworkers are protected from suit under the doctrines of absolute immunity and/or qualified immunity.  *Id*. at 16–21.

The Court turns first to determining whether Plaintiff has adequately alleged claims against the LSSI Defendants under § 1983.[12]  The legal standard for dismissal under Rule 12(b)(6) is discussed above.  *See supra* Section III(a).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The LSSI Defendants argue that Plaintiff does not

---

[12] The LSSI Defendants first argue that the Court should dismiss this action under the *Younger* abstention doctrine because continuing to hear this case would interfere with ongoing child custody and child welfare proceedings. Mem. Supp. LSSI Mot. Dismiss 8–10.  Because, as discussed below, *see infra* Section IV(b)(ii), it is not immediately apparent what claims Plaintiff seeks to bring, it is also not entirely clear to the Court that resolution of Plaintiff's claims would interfere with ongoing state proceedings.  Because the Court dismisses the claims against the LSSI Defendants under Rule 12(b)(6), *see id.*, it need not address whether *Younger* abstention would be appropriate.

satisfactorily allege either of these elements as to the LSSI Defendants.  Mem. Supp. LSSI Mot.
Dismiss 12–16.

### a.   Color of State Law

"[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private
conduct, no matter how discriminatory or wrongful."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526
U.S. 40, 50 (1999) (quotation marks omitted).  Thus, to bring a § 1983 claim against a defendant,
that defendant must "fairly be said to be a state actor."  *Id.* (quotation marks omitted).  In the
complaint, Plaintiff states that LSSI "is employed as a Government Entity for the People in With
[sic] the State of Illinois" and that it is an "official[] agency."  Compl. 10.  While the LSSI
Defendants assert that LSSI is a private, not-for-profit child welfare agency, Mem. Supp. LSSI
Mot. Dismiss 1, the Court must accept the allegations in the complaint as true at this stage, *see
Phillips*, 714 F.3d at 1019.  The Court will therefore proceed at this stage by assuming that the
LSSI Defendants are state actors.

### b.   Violation of Federal Law

Plaintiff must still allege that the LSSI Defendants committed violations of constitutional
provisions or other federal laws.  As discussed above, *see supra* Section III(b)(ii)(1), it is not
easy to discern from the complaint the claims Plaintiff seeks to bring against various Defendants,
but violations of the Fourteenth Amendment due process clause and the Fourth Amendment
prohibition against unreasonable search and seizure are likely candidates.  *See* Mem. Supp. LSSI
Mot. Dismiss 12 ("Plaintiff does not identify any specific constitutional right she was deprived
of by the LSSI Defendants.  Instead, her Complaint is riddled with vague and general criticisms
of the caseworker services that the LSSI Defendants provided to her . . . .").  But again,
Plaintiff's allegations are too vague to provide the LSSI Defendants with fair notice of the ways

in which they allegedly violated her constitutional rights. *See Tamayo*, 526 F.3d at 1083. In essence, her allegations against the LSSI Defendants come down to the caseworkers' supposed failure to give her good advice, failure to live up to their promises to help her with her children, failure to assist her with the abuse she received from Walker and Davis, and general dereliction of their duties. *See* Compl. 3–5, 10, 18–22. She does not allege that the LSSI Defendants took direct part in seizing her children. She does allege that Rodriguez lied to the court that she was involved in DCFS proceedings, but this was apparently in a civil case Plaintiff herself had brought against Walker, so it is unclear how that lie related to child welfare proceedings brought against Plaintiff, if at all. *See id*. at 18. Nor does she bring suit on behalf of her children. *See supra* Section III(b)(ii)(1)(B). As such, the Court cannot infer from her complaint that the LSSI Defendants violated any of her constitutional rights. Thus, Plaintiff has failed to state § 1983 claims against the LSSI Defendants, and the Court grants the LSSI Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, Plaintiff Chariot Campbell's motion for default summary judgment ("First Motion for Default Summary Judgment"), ECF No. 11, is DENIED; Plaintiff's addendum to the First Motion for Default Summary Judgment, construed as a motion to supplement the First Motion for Default Summary Judgment, ECF No. 12, is GRANTED; Plaintiff's subsequent motion for default summary judgment, ECF No. 13, is DENIED; Defendants Officer Lewis, Officer Olinger, and Officer Swanson's motion to dismiss for improper service, ECF No. 15, is DENIED; Defendants Illinois Department of Children and Family Services, Lisa Zimmerman, and Misty Lampley's motion to dismiss, ECF No. 19, is GRANTED; and Defendants Shannon Blind, Elena Rodriguez, Jordan Timmons, Kim Dutton, and Lutheran Social Services of Illinois' motion to dismiss, ECF No. 27, is GRANTED.

Plaintiff may file an amended complaint within 30 days of service of this Order.  *See* Fed. R.

Civ. P. 15(a)(2) ("The court should freely give leave [to file an amended complaint] when justice

so requires.).  If she fails to do so, Defendants Illinois Department of Children and Family

Services, Lisa Zimmerman, Misty Lampley, Shannon Blind, Elena Rodriguez, Jordan Timmons,

Kim Dutton, and Lutheran Social Services of Illinois will be dismissed from the case.

 The Clerk is directed to replace "Galesburg Police Department" as a party with "City of

Galesburg."  The Clerk is further directed to add Defendant Officer Sage to the docket.  The

deadline for Plaintiff to serve Defendants Officer Lewis, Officer Olinger, and Officer Swanson is

extended to May 30, 2023.  From the information before the Court, it does not appear that

Defendants City of Galesburg, Officer Sweeney, Officer Sage, Officer Williams, the Children's

Home Association of Illinois, and Jessica Votava have been properly served.  The deadline to

serve these Defendants is also extended to May 30, 2023.  If they have not been served by this

deadline, they may be dismissed from the case.  *See* Fed. R. Civ. P. 4(m).

 Entered this 31st day of March, 2023.

s/ Sara Darrow

SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
