UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| CHARIOT CAMPBELL, | ) | |
| | ) | |
| Plaintiff,[1] | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-04013-SLD-JEH |
| | ) | |
| CITY OF GALESBURG, ILLINOIS | ) | |
| DEPARTMENT OF CHILDREN AND | ) | |
| FAMILY SERVICES, KELLY CRAMER, | ) | |
| DAWN CHAPMAN, LUTHERAN SOCIAL | ) | |
| SERVICES OF ILLINOIS, ELENA | ) | |
| RODRIGUEZ, KIM DUTTON, LEXI | ) | |
| HAGER, and KEVIN McCLURE, | ) | |
| | ) | |
| Defendants.[2] | ) | |

## ORDER

Before the Court are Lutheran Social Services of Illinois, Elena Rodriguez, Kim Dutton,

and Lexi Hager's (collectively, the "LSSI Defendants") Motion to Dismiss Plaintiff's Amended

Complaint, ECF No. 43; Illinois Department of Children and Family Services's ("DCFS")

Motion to Dismiss Amended Complaint, ECF No. 46; City of Galesburg's ("the City") Motion to

---

[1] The amended complaint, ECF No. 35, and various other pleadings also name A.W., A.W., T.D., and A.D., minor children, and Jeannette Moultrie as Plaintiffs. But a parent may not litigate an action *pro se* on behalf of her child, *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010) ("[A] next friend may not, without the assistance of counsel, bring suit on behalf of a minor party."), and pursuant to Federal Rule of Civil Procedure 11(a), every pleading and motion must be signed "by a party personally if the party is unrepresented," Fed. R. Civ. P. 11(a). Jeanette Moultrie has not signed any of the pleadings. Therefore, A.W., A.W., T.D., A.D., and Jeannette Moultrie are DISMISSED from this suit without prejudice.

[2] The amended complaint named Officer Sage, Officer Sweeney, and Officer Olinger as defendants, but the Court dismissed them without prejudice because Plaintiff failed to properly serve them "by the extended deadline of June 27, 2023 [despite] ample reminders from the Court to do so." July 6, 2023 Text Order. The amended complaint also names Kelly Cramer, Dawn Chapman, and Kevin McClure as defendants, but to date, Plaintiff has not filed any proof of service of summons as to those defendants. Plaintiff was granted until May 20, 2024 to serve Cramer, Chapman, and McClure. *See* Mar. 19, 2024 Text Order (Hawley, J.). In Plaintiff's reply in support of her motion for judgment on the pleadings, "Plaintiff[] requests the Court[] acknowledge the State of Illinois as an additional defendant." Pl.'s Rebuttal Def.'s Mot. Oppose 9, ECF No. 65. Though the Court could construe this request as a motion to amend the complaint pursuant to Rule 15(a)(1), "courts have broad discretion to deny leave to amend . . . where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182, (1962)). Here, the Court finds that adding the State of Illinois as a defendant would be futile because (1) a State is not a "person" who can be sued under § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); and (2) Eleventh Amendment sovereign immunity bars suit against a State under § 1983.

Dismiss, ECF No. 52; *Pro se* Plaintiff Chariot Campbell's Motion For Judgement On the Pleadings and/or Summary Judgment, ECF No. 57; Plaintiff's petition for leave to proceed *in forma pauperis* ("IFP"), ECF No. 58; and Plaintiff's Motion to Request Counsel, ECF No. 59.

For the following reasons, the LSSI Defendants' Motion to Dismiss is GRANTED; DCFS's Motion to Dismiss is GRANTED; the City's Motion to Dismiss is GRANTED; Plaintiff's Motion for Judgment on the Pleadings is DENIED; Plaintiff's IFP Petition is GRANTED; and Plaintiff's Motion to Request Counsel is DENIED.

<h1 style="text-align:center">BACKGROUND[3]</h1>

Plaintiff is the mother of A.W. and A.W. ("the Walker children") and T.D. and A.D. ("the Davis children"). Since 2021, Plaintiff has had difficulties and frustrating interactions with the Galesburg Police Department ("GPD"), DCFS, and LSSI relating to the custody of her children. On July 27, 2021, Plaintiff met with Detective Smith at the Galesburg Public Safety Building and provided him with a 40-page statement of her concerns about certain members of the GPD, DCFS, and LSSI who Plaintiff "felt had wronged her and her children in some way (between January and July of 2021)." Am. Compl. 4.

That same day, Plaintiff's mother Jeannette Moultrie called Plaintiff to tell her that GPD Officer Sage was at Plaintiff's parents' house where the Walker children were then residing. Moultrie sounded frightened, but Plaintiff assured her mother that it was expected for an officer to visit her parents' home to "physically witness both Walker children" which would allow an

---

[3] When reviewing a motion to dismiss, the Court "accept[s] all facts alleged in the complaint as true and draw[s] all reasonable inferences from those facts in favor of the plaintiff." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). The factual background is therefore drawn from the amended complaint, as well as Plaintiff's document entitled "Supporting Evidence and Utility of Evidence" which the Court construes as a timely supplement to the amended complaint. *See* Supporting Evid., ECF No. 36; Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course no later than: 21 days after serving it, or . . . 21 days after service of a motion under Rule 12(b), (e), or (f) . . . ."). Plaintiff has filed additional exhibits and supplements, but because they were filed outside the time periods permitted by Rule 15(a)(1), the Court will not consider them at this stage. *See* Pl.'s Exs., ECF No. 42; Pl.'s Important Update/Addendum, ECF No. 56; Pl.'s Evid. Supp. Compl. Claim, ECF No. 60.

AMBER alert[4] that had been issued to be terminated.  *Id.* at 5.  After Moultrie's call ended

abruptly, Plaintiff went to her parents' house to check on her parents and children, arriving at

about 6:45 P.M.  Sage intercepted her, warning her about violating a protection order that was in

place and informing her that the Walker children were inside.  Plaintiff requested her SNAP EBT

card from her parents, which Sage allowed, and she then peacefully departed.

Later that evening, Plaintiff received a call from DCFS stating that her Walker children

had to be moved due to reported bugs at her parents' house.  Under duress, Plaintiff arranged for

her niece B. Miller to temporarily care for her children.  The Walker children were then removed

from her parents' custody and placed under B. Miller's care, without any further communication

from DCFS or LSSI regarding the case.  There was no immediate threat to the children's safety

at that time, and Plaintiff characterizes the removal of the Walker children as kidnapping.

In September 2021, Plaintiff was contacted by a DCFS worker who falsely informed her

that DCFS was no longer involved in the Walker case and that the responsibility had been

transferred to LSSI, specifically Rodriguez and her supervisor Dutton.  Plaintiff reached out to

LSSI and arranged a meeting with Rodriguez, but Rodriguez admitted she had limited

knowledge of the case and was unable to provide Plaintiff with answers or solutions.  Despite

Rodriguez's assurances of assistance, Plaintiff did not hear from her for several weeks.

When Plaintiff followed up with Rodriguez in late October 2021, she was informed that

Rodriguez would no longer be her caseworker, leaving Plaintiff feeling frustrated and confused

about the status of her Walker children's case.  Plaintiff then subpoenaed Rodriguez to testify in

court about their conversation.  In court on November 10, 2021, Plaintiff truthfully told the judge

---

[4] "AMBER stands for America's Missing: Broadcast Emergency Response."  United States Department of Justice, *Frequently Asked Questions*, AMBER Alert, https://amberalert.ojp.gov/about/faqs (last visited Mar. 29, 2024). AMBER Alerts are emergency notifications broadcasted to solicit public assistance in the search for abducted children, disseminating critical information quickly to aid in their safe recovery.  *Id.*

that she did not have any active cases with DCFS, but the judge was unconvinced.  Rodriguez

then lied to the judge, telling him that Plaintiff did have an active DCFS case involving her

Walker children in Peoria.

Throughout November and December 2021, Plaintiff contacted Rodriguez on numerous

occasions trying to obtain the Walker case plan "so that [she] may cooperate with the plan terms

and satisfy conditions for [Plaintiff's] Walker children to be returned to [Plaintiff's] care," but

Rodriguez continuously failed to provide answers or the case plan.  *Id.* at 10.[5]

On January 3, 2022, Plaintiff attempted to communicate to Rodriguez her concerns about

her Walker children potentially being abused by the children's foster family, but Rodriguez

failed to respond promptly.  Plaintiff then contacted LSSI for assistance, where Dutton

acknowledged the validity of her concerns but did not provide immediate solutions.

On January 6, 2022, a Knox County court ruled in Plaintiff's favor on the protection

order, but LSSI inexplicably revoked Plaintiff's visits with her children, allegedly due to

Rodriguez's claims that Plaintiff was unstable.  Plaintiff did not hear from anyone at LSSI or

DCFS until March 1, 2022, when she reached out to Rodriguez asking why her visitation was

revoked.  Rodriguez responded to Plaintiff, but instead of addressing her concerns directly,

Rodriguez redirected Plaintiff to another caseworker, Hager.  Despite Plaintiff's attempts to

plead with Hager, Plaintiff was only granted supervised visits.

On July 11, 2022, Plaintiff reached out to Hager again requesting the Walker case plan.

Plaintiff did not receive a response from Hager, but later that day DCFS and GPD officials came

---

[5] Plaintiff does not explain exactly what the "Walker case plan" is, but LSSI Defendants state that Plaintiff is
referring to a DCFS Integrated Assessment ("IA"), which was submitted to the juvenile court in proceedings
involving the Walker children.  LSSI Mem. Law. Supp. Mot. Dismiss 4, ECF No. 44.  Plaintiff attached a copy of a
November 7, 2022 Walker IA as an exhibit. Nov. 7, 2022 Walker DCFS IA, Supporting Evid. Ex. 1, ECF No. 36-1.
The exhibit has been sealed for noncompliance with Federal Rule of Civil Procedure 5.2(a) and Civil Local Rule
5.11(A) because it contains unredacted private information.  Mar. 29, 2024 Text Order.

to her home, stating they "just needed to see and speak with both Davis children inside of the

house," and reassuring her they weren't there to remove her Davis children.  *Id.* at 12.  Plaintiff

cooperated with DCFS and GPD during this visit, and DCFS expressed no concerns to Plaintiff.

The Davis children were planning to visit Plaintiff's parents later that day.  Plaintiff's

father arrived to pick up the children, but a DCFS worker intervened and said she needed to

consult her supervisor before allowing the children to leave.  The DCFS worker told Plaintiff that

Hager "had informed DCFS that [Plaintiff] failed and refused to cooperate with either of the

[W]alker court case and the [W]alker case service plans and that [Plaintiff] had been found unfit

in those Walker case courts in Peoria [C]ounty and that court had found [Plaintiff] to be unfit,

therefore [the DCFS worker] stated that DCFS was taking [the Davis] children into the

'protective' custody of the State."  *Id.* at 13.  "[A]s a result of Hager's blatant lies," DCFS

"forcefully remove[d]" the Davis children from Plaintiff's home.  *Id.* at 16.

Plaintiff persistently reached out to members of DCFS, LSSI, and GPD for more than a

year and a half, but no one provided her with the Walker case plan or told her what conditions

she must satisfy to regain custody of the Walker children.  Plaintiff was finally provided with the

Walker case plan in August 2022, but it was full of "false negative allegations" about Plaintiff.

*Id.* at 16.  On May 1, 2023, Hager provided a report dated November 17, 2022 to Plaintiff which

also contained false information about Plaintiff.  Supporting Evid. 1, ECF No. 36; *see also supra*

note 5.

Plaintiff has consistently shown an "earnest desire to be informed and

participate/cooperate with any and all requirements of the Walker case in order for [her] Walker

children to be returned home to her caring custody."  *Id.* at 4.  Plaintiff's primary contention is

that Defendants deprived her of her right to information about the Walker case and the Walker

case plan for nearly two years.  *See* Am. Compl. 4 ("Despite all of [Plaintiff's] attempts to obtain help[,] information or any kind of 'plan' regarding how [Plaintiff] could regain custody of her Walker children, [Plaintiff] was denied and refused for more than one year by the sum collective of the actions, negligence, dereliction of Duty . . . by these many Defendants.").

Plaintiff seeks "[t]he immediate return of [her] four biological children," compensatory damages in the amount of $30 million, punitive damages in the form of an order requiring the City to change its agency guidelines, as well as criminal fines and imprisonment for all Defendants.  *Id.* at 35.

Plaintiff filed this lawsuit on January 21, 2022.  Compl., ECF No. 1.  She then filed two motions for default summary judgment, ECF Nos. 11, 13, and Defendants filed motions to dismiss, ECF Nos. 15, 19, 27.  The Court denied Plaintiff's motions for default judgment and granted in part and denied in part the motions to dismiss.  Mar. 31, 2023 Order, ECF No. 32. Plaintiff filed an amended complaint on May 9, 2023, *see* Am. Compl., ECF No. 35, and on May 17, 2023, she filed a document entitled "Supporting Evidence and Utility of Evidence," *see* Supporting Evid., which the Court construes as a supplement to the amended complaint.  LSSI Defendants filed a motion to dismiss the amended complaint on June 23, 2023.  LSSI Mot. Dismiss.  DCFS filed its motion to dismiss on June 23, 2023.  DCFS Mot. Dismiss.  Plaintiff responded to both the LSSI Defendants' and DCFS's motions in a response filed July 7, 2023. Pl.'s Resp. LSSI, DCFS Mots. Dismiss, ECF No. 49.  The City filed a motion for leave to file a motion to dismiss and answer to the amended complaint on July 26, 2023.  City Mot. Leave File Mot. Dismiss & Answer, ECF No. 50.  The Court granted the City's motion.  Aug. 24, 2023 Text Order.  Plaintiff responded to the City's motion to dismiss on September 8, 2023.  Pl.'s Resp. City Mot. Dismiss, ECF No. 55.  On December 1, 2023, Plaintiff filed the Motion for Judgement

On the Pleadings and/or Summary Judgment; the petition to proceed IFP; and the pending

motion to request counsel.  On December 15, 2023, the City and the LSSI Defendants  filed

responses opposing Plaintiff's motion to request counsel, Resps. Mot. Counsel, ECF Nos. 61 &

63, and the LSSI Defendants filed a response opposing Plaintiff's motion for judgment on the

pleadings, LSSI Resp. Mot. J. Pleadings, ECF No. 62.  On December 21, 2023, the City also

filed a response opposing Plaintiff's motion for judgment on the pleadings.  City Resp. Opp.

Pl.'s Mot. J. Pleadings, ECF No. 64.  On January 16, 2024, Plaintiff filed a reply in support of

her motion for judgment on the pleadings.  Pl.'s Rebuttal Def.'s Mot. Oppose, ECF No. 65.

## DISCUSSION

## I.     Motions to Dismiss[6]

### a.   Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  At the motion to dismiss stage, the key

inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the

plaintiff's claim and its basis."  *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934

(7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  A Rule 12(b)(6) motion

challenges the legal sufficiency of a complaint's allegations and provides for dismissal when a

complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

---

[6] Plaintiff also requests a "default summary judgment" or "summary default judgment" in her responses to
Defendants' motions to dismiss.  *See* Pl.'s Resp. City Mot. Dismiss 1 ("The plaintiffs request a Default Summary
Judgment regarding the matter before the Court."); Pl.'s Resp. LSSI & DCFS Mot. Dismiss 1 ("Plaintiffs wish to
contest the motion for dismissal: And move to seek Summary Default Judgment.").  The Court addressed similar
requests from Plaintiff in its March 31, 2023 Order.  An entry of default, which has not been entered, is a
prerequisite to default judgment.  *See Virgin Records Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 965 (N.D. Ind.
2006) ("Entry of default must precede an entry of default judgment.").  Entry of default is appropriate "[w]hen a
party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ.
P. 55(a).  All Defendants who have been properly served have filed responsive pleadings, thereby making an entry
of default, as well as default judgment, inappropriate.

"[D]etailed factual allegations are unnecessary," *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016), but the complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When deciding on a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences from those factual allegations in favor of the nonmoving party. *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim," however, "are not entitled to [the] presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain more than "labels and conclusions" or "naked assertions devoid of further factual enhancement" — in other words, it must go beyond a simple "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration omitted) (quotation marks omitted).

Litigants proceeding *pro se* "are not held to the stringent standards expected of pleadings drafted by lawyers," meaning *pro se* complaints must be "liberally construed." *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999). But a *pro se* litigant must still meet the minimal pleading requirements. *Narvaez v. Wilmers*, No. 14-cv-10388, 2015 WL 1396477, at *2 (N.D. Ill. Mar. 24, 2015) ("[N]othing excuses a *pro se* litigant from the requirement that a complaint give the defendant fair notice of the claim and the factual allegations on which it rests.").

**b. Analysis**

Plaintiff's primary allegations against Defendants center on: (1) the wrongful removal of the Walker children on July 27, 2021; (2) the wrongful removal of the Davis children on July 11,

2022; (3) the failure of LSSI and DCFS to provide Plaintiff with the Walker case plan; and (4) the falsification of evidence by Defendants that contributed to the removal of Plaintiff's children, as well as her current challenges trying to regain custody. All Defendants move to dismiss all claims against them.

### i.  LSSI Defendants

LSSI Defendants argue that the Court should dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6). LSSI Mem. Law. Supp. Mot. Dismiss 10–22, ECF No. 44. LSSI Defendants assert that Plaintiff "does not and cannot plead any of the basic elements of a § 1983 claim." *Id.* at 21–22.[7]

In response, Plaintiff reiterates her allegations from the amended complaint, contending that "the failure to inform or provide [Plaintiff] with necessary Walker case information and Service Plan in a timely manner led to [Plaintiff] a most unusual punishment of being ruled 'unfit' in Walker's case regarding [the Walker children]." Pl.'s Resp. LSSI, DCFS Mots. Dismiss 3. Plaintiff bring claims against the LSSI Defendants pursuant to 42 U.S.C. § 1983 alleging violations of her Fourth, Fifth, Eighth, and Fourteenth Amendment rights. *Id.* at 5–7.[8]

Plaintiff's claims against Rodriguez include "spying with the intent to gather information under false pretense[s] . . . while under the color of law," falsification of evidence in ongoing family court cases, "withholding of pertinent case information and failure to inform . . . [and] provide necessary Walker case Plan to [Plaintiff] in order for [Plaintiff] to have the ability to be

---

[7] LSSI Defendants also argue the Court should dismiss: for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and *Younger* abstention doctrine; because Plaintiff does not plead any facts to support a *Monell* claim against LSSI; and because Rodriguez, Hager, and Dutton are entitled to absolute and qualified immunity. LSSI Mem. Law. Supp. Mot. Dismiss 7–10, 17–22. Because the Court dismisses the claims against the LSSI Defendants under Rule 12(b)(6), it need not address these arguments.

[8] Plaintiff also purports to bring claims against LSSI Defendants under various state and federal statutes include the Antitrust Civil Process Act and the Illinois Human Rights Act, but the Court cannot decipher how those statutes are applicable based on Plaintiff's factual allegations. Pl.'s Resp. LSSI, DCFS Mots. Dismiss 5–7.

able to cooperate with said Plan," and "conspiracy to conceal or coverup wrongdoings committed by Rodriguez and or other members of [LSSI or DCFS]." Am. Compl. 2. Plaintiff accuses Dutton "of the same charges as Rodriguez" under a theory of supervisory liability. *Id.* Plaintiff also alleges that Dutton "did not keep her promises" because she did not provide Plaintiff with "Walker court related information" or "a Walker case plan[] in a timely manner." *Id.* at 3. Plaintiff additionally "charge[s] Hager with the same criminal offenses bestowed upon Rodriguez and Dutton" and further "charge[s] Hager with conspiracy to kidnap and accomplice to kidnapping" of the Davis children on July 11, 2022, "child endangerment" of the Walker children, and "conspiracy to harm" Plaintiff and her children. *Id.*

The Court first considers whether Plaintiff has adequately alleged claims against the LSSI Defendants under § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The LSSI Defendants argue that Plaintiff does not properly allege either of these elements against them. LSSI Mem. Law. Supp. Mot. Dismiss 12–17.

To satisfy the under-color-of-state-law element, a defendant must "fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks omitted). In the amended complaint, Plaintiff declares that LSSI is a state actor and that it is "employed as [an] official member[] of the municipality of Galesburg," but provides no further detail to support that assertion. Am. Compl. 14. "[S]tate action is something that plaintiff[s] must support in their complaints with factual allegations, rather than simply formulaic recitations, and . . . failure to do so will result in dismissal." *Lewis v. Metro Enf't*, No. 15-cv-50264, 2016 WL 861295, at *4 (N.D. Ill. Mar. 7, 2016) (citing *Hallinan v. Fraternal Order of*

*Police*, 570 F.3d 811, 820 (7th Cir. 2009)).  The Court finds Plaintiff's statement that LSSI is a

state actor to be a legal conclusion which is not entitled to the presumption of truth.  *See*

*McCauley*, 671 F.3d at 616.  Because Plaintiff has failed to meet the under-color-of-state-law

element, her § 1983 claims necessarily fail.  Accordingly, the Court GRANTS the LSSI Motion

to Dismiss.

### ii.  DCFS

Plaintiff includes DCFS in a list of defendants who committed "wrongful and illegal

actions" — particularly, violations of Plaintiff's Fourth and Fourteenth Amendment rights —

between March 2021 and August 2022, and asserts that DCFS "can be held accountable [for] the

conduct of its employees."  Am. Compl. 15–16.  DCFS argues Plaintiff's amended complaint

should be dismissed because (1) "it is impossible to discern whether [Plaintiff] is bringing a

claim against DCFS" and (2) the suit is barred by sovereign immunity.  DCFS Mot. Dismiss 1–2.

The Court agrees on both counts.

A complaint must contain sufficient detail to give the defendant "fair notice" of the basis

for the plaintiff's claims.  *Indep. Tr. Corp.*, 665 F.3d at 934.  Here, the precise ways DCFS

allegedly caused harm to Plaintiff is unclear.  Additionally, as the Court explained in its prior

Order, DCFS is an Illinois state agency, meaning that Eleventh Amendment sovereign immunity

applies and bars Plaintiff's suit against DCFS.  *See* Mar. 31, 2023 Order 17 (citing *Darryl H. v.*

*Coler*, 801 F.2d 893, 906 (7th Cir. 1986)); *id.* at 17–18 ("And Plaintiff bring[s]her claims

pursuant to § 1983, Compl. 1, a statute which the Supreme Court has specifically found does not

abrogate state sovereign immunity, *see Quern v. Jordan*, 440 U.S. 332, 340–41 (1979).  As no

exceptions to sovereign immunity apply, the Court finds that the Eleventh Amendment bars this

suit from being brought against DCFS."); U.S. Const. amend. XI.  Moreover, it is well-settled

11

that "States and their agencies are not 'persons' for the purpose of § 1983 and therefore cannot

be sued for damages under that statute." *Salem v. Att'y Registration & Disciplinary Comm'n of*

*Sup. Ct. of Ill.*, 85 F.4th 438, 443 (7th Cir. 2023). The Court GRANTS the DCFS motion to

dismiss.

### iii. City of Galesburg

Plaintiff purports to bring claims against the City under *Monell v. Department of Social*

*Services of the City of New York*, 436 U.S. 658 (1978). Plaintiff alleges that the City violated her

constitutional rights by "allowing so much widespread corruption" and misconduct to be

committed by certain City police officers, including conspiracy to kidnap the Walker children on

July 27, 2021, conspiracy to cover up the kidnapping, tampering with evidence, falsifying

reports, fraud, perjury, lying to Plaintiff's parents, child endangerment, retaliation for

whistleblowing, and "obstruction of (true) justice." Am. Compl. 2. Plaintiff further avers that

the City "can be held accountable [for] the conduct of its employees." *Id.* at 15.

The City asserts that Plaintiff has failed to state a claim to relief because the amended

complaint "consists only of statements of the law and generalized allegations unsupported by any

specific factual allegations." City Mem. Law Supp. Mot. Dismiss 5, ECF No. 52 at 3–8.[9] The

City argues that the amended complaint "essentially concerns custody issues involving Plaintiff's

children" and Illinois state agencies. *Id.* at 3.

*Monell* established that municipalities cannot be held vicariously liable for the torts of

their employees under § 1983. 436 U.S. at 691 ("[A] municipality cannot be held liable *solely*

because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under

§ 1983 on a *respondeat superior* theory."). Plaintiff's statement that the City can be held

---

[9] The Court uses the page numbers generated by CM/ECF because the City's Memorandum of Law in Support of its
Motion to Dismiss is not paginated.

accountable for the conduct of its employees incorrectly states the law.

A municipality can be liable, though, when it is "directly responsible for the constitutional deprivation." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019) (citing *Monell*, 436 U.S. at 691–94).  Under *Monell*, the City can only be held liable "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).  Within this framework, a municipality may be held liable for failing to properly train or supervise its employees, *City of Canton v. Harris*, 489 U.S. 378, 387 (1989), which requires a plaintiff to show proof of "deliberate indifference" by the municipality, *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006).  "This proof can take the form of either (1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by its officers." *Id.* at 1029–30.

Plaintiff does not identify a City official with final policy-making authority, nor does she point to an official policy that has been adopted and promulgated by the City.  Accordingly, Plaintiff's claim should be analyzed under the second *Monell* prong, meaning that she must plead factual content that allows a court to plausibly infer that the governmental agency had a widespread practice or custom that deprived her of her constitutional rights. *McCauley*, 671 F.3d at 616; *see also Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("At the pleading stage, . . . a plaintiff pursuing [a *de facto* custom] theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom.").

Plaintiff has failed to plead facts that would tend to demonstrate a widespread custom of kidnapping, filing false reports, evidence tampering and obstructing justice within the City. Plaintiff focuses much of her attention on the July 27, 2021 and July 11, 2022 incidents in which City police officers were involved in removing her children from her care.  Her amended complaint does not provide examples of other City police officers committing acts similar to those complained of here, nor does she even plausibly allege that such examples exist.  To the extent Plaintiff alleges that the City failed to supervise its employees, she has not provided any facts showing that the City has been deliberately indifferent, such as by stating that there have been repeated complaints that the City has failed to act on.  The amended complaint simply states that the City was aware of "a widespread seemingly common problem persisting among several of [the City's] agencies," the City caused or allowed "widespread violations," "did nothing to remedy the situation effectively for the plaintiff's benefit," and "failed to reprimand any of the violators." Am. Compl. 30.  The actions of the City police officers in Plaintiff's case alone cannot, without more, sustain a *Monell* claim based on a *de facto* custom or policy theory. *See Gill*, 850 F.3d at 344; *see also Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) (explaining that "isolated acts of misconduct will not suffice; a series of violations must be presented" as evidence of a widespread practice or custom under *Monell*).  The Court GRANTS the City's motion to dismiss.

14

## II.     Motion for Judgment on the Pleadings

Plaintiff filed a "Motion For Judgement On the Pleadings and/or Summary Judgment" on December 1, 2023.[10]  Plaintiff cites what appear to be Iowa Rules of Civil Procedure[11] which are inapplicable to this case, but by construing Plaintiff's *pro se* filing liberally, the Court infers that Plaintiff is moving for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

### a.  Legal Standard

"Under Rule 12(c), a party can move for judgment on the pleadings after the filing of the complaint and answer."  *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).  A motion for judgment on the pleadings under Rule 12(c) is decided using the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020).  Additionally, the moving party must show that there are no material issues of fact that need to be resolved.  *Moss*, 473 F.3d at 698.  "When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief."  *Scottsdale Ins. Co. v. Columbia Ins. Grp.*, 972 F.3d 915, 919 (7th Cir. 2020).

---

[10] Plaintiff also filed photographs as what she titled "Evidence to Support Complaint Claim," on December 11, 2023, but because they were filed more than 21 days after any responsive pleading, the Court declines to consider them as a supplement to the Amended Complaint.  *See supra* note 3.  Moreover, photographs are not considered part of the pleadings, and therefore are inappropriate to consider for a Rule 12(c) motion for judgment on the pleadings. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) ("The pleadings include the complaint, the answer, and any written instruments attached as exhibits."  (citing Fed. R. Civ. P. 10(c))).
[11] *See, e.g.*, Pl.'s Mot. J. Pleadings 1 (citing "Rule 1.405(3)"; "Rule 1.954 Judgement on the Pleadings"; and "Rules 1.500(2) parts a and c- Disclosure of Expert Testimony; 1.501(1)-(2) Discovery Methods; 1.508 Discovery of Experts").

### b.  Analysis

A plaintiff cannot move for judgment on the pleadings under Rule 12(c) until after a defendant has filed its answer.  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed.).  The City is the only Defendant who has filed an answer at this time, meaning that a judgment on the pleadings could only be entered, if at all, against the City.  However, the City "denies all allegations in Plaintiff's Complaint."  City Answer 1, ECF No. 53; *see also* City Mem. Law Supp. Mot. Dismiss 4 ("[T]here are no facts whatsoever to support such allegations.").  Though "Plaintiff[] argue[s] that [she is] entitled to a Judgement On the Pleadings, as it does appear beyond a doubt that on the facts that the Plaintiff[] [is] entitled to relief," Pl.'s Rebuttal for Def.'s Mot. Oppose 3, the Court finds that Plaintiff has not shown that there are no material issues of fact left to be resolved.  The Court therefore DENIES Plaintiff's motion for judgment on the pleadings.

### III.  Petition to Proceed *In Forma Pauperis*

### a.  Legal Standard

28 U.S.C. § 1915(a)(1) allows a court to authorize commencement and prosecution of a suit without prepayment of fees by a person who submits an affidavit stating her assets and that she is unable to pay such fees.  "[A] person need not be absolutely destitute in order to enjoy the benefit of [§] 1915."  *Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980).  She need only be unable to pay the costs of the proceeding and still be able to provide "the necessities of life" for herself and her dependents.  *Id.* (quotation marks omitted).  Courts have broad discretion to determine whether a litigant is eligible to proceed IFP.  *Whitaker v. Dempsey*, 83 F.4th 1059, 1061 (7th Cir. 2023).

### b. Analysis

Plaintiff paid the filing fee in 2022, *see* May 16, 2022 Docket Entry, but has now submitted an affidavit in support of her IFP petition declaring under penalty of perjury that she is unable to pay further costs of the proceeding, IFP Pet. 1.[12]  She represents that she had an average of $2,363.00 in monthly income prior to filing the IFP petition in December 2023, and her anticipated income for January 2024 was $1,963.00.  *Id.* at 1–2.  Plaintiff's assets include $461.00 in a bank account and a 2000 Chevy Blazer valued at $1,000.00.  *Id.* at 2–3.  She indicates that she receives no child support or alimony, though she has four children who rely on her for support.  *Id.* at 1, 3–4.  Plaintiff attests that she is employed at DORS (Galesburg) making $15.00 per hour but does not enumerate how many hours she works.  *Id.* at 2.  Considering her monthly income and expenses, "including affording to maintain age appropriate food and activities during [her] weekly visits with [her] kids," Plaintiff states she cannot afford to pay the costs of the proceeding.  *Id.* at 6.  The Court agrees and accordingly GRANTS Plaintiff's IFP Petition.

### IV.   Motion to Request Counsel

### a.   Legal Standard

Under the federal IFP statute, a "court may request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1).  However, "[c]ivil litigants do not have a right, either constitutional or statutory, to counsel."  *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995).  When faced with a request to appoint counsel, the court must determine: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to

---

[12] The Court uses the page numbers generated by CM/ECF because Plaintiff inserted a page into her IFP Petition which disrupts Form AO 239's page numbering.

litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).  Litigating a case includes "evidence gathering, preparing and responding to motions and other court filings, and trial." *Id.* at 655.  In considering whether the difficulty of the case exceeds the plaintiff's capacity to litigate it, the court considers "the plaintiff's literacy, communication skills, educational level, and litigation experience" as well as the plaintiff's "intellectual capacity and psychological history." *Id.*

    **b.  Analysis**

    Plaintiff has established that she is unable to afford counsel and that she has made diligent efforts to find a lawyer but has been unsuccessful.  *See* Mot. Request Counsel 3 (showing that Plaintiff has contacted at least 12 lawyers to represent her).  Now the Court must determine "whether the difficulty of the case—factually and legally—exceeds [her] capacity as a layperson to coherently present it" on her own.  *Pruitt*, 503 F.3d at 655.  Though her pleadings are verbose and her exhibits abundant (comprising nearly 1,400 pages), she has demonstrated an awareness of the relevant issues and the ability to gather substantial evidence to support her claims.  Substantively, Plaintiff cites to relevant authorities and generally argues her position under the proper standard.  For example, in her response to LSSI Defendants' and DCFS's motions to dismiss, Plaintiff correctly states her burden at the motion to dismiss stage, and cites to numerous constitutional provisions, statutes, and cases to support her position.  *See generally* Pl.'s Resp. LSSI & DCFS Mot. Dismiss.  The Court appreciates how challenging this lawsuit may be for Plaintiff, but she has done a thorough job representing herself thus far.  Accordingly, the Court DENIES Plaintiff's motion to request counsel.

**CONCLUSION**

For the foregoing reasons, Defendants Lutheran Social Services of Illinois, Elena

Rodriguez, Kim Dutton, and Lexi Hager's Motion to Dismiss Plaintiff's Amended Complaint,

ECF No. 43, is GRANTED; Defendant Illinois Department of Children and Family Services's

Motion to Dismiss Amended Complaint, ECF No. 46, is GRANTED; Defendant City of

Galesburg's Motion to Dismiss, ECF No. 52, is GRANTED; Plaintiff Chariot Campbell's

Motion For Judgment On the Pleadings, ECF No. 57, is DENIED; Plaintiff's petition for leave to

proceed *in forma pauperis*, ECF No. 58, is GRANTED; and Plaintiff's Motion to Request

Counsel, ECF No. 59, is DENIED.

The deadline for Plaintiff to serve Defendants Kelly Cramer, Dawn Chapman, and Kevin

McClure is May 20, 2024.  *See* Mar. 19, 2024 Text Order (Hawley, J.).  If they have not been

served by this deadline, they may be dismissed from the case.  *See* Fed. R. Civ. P. 4(m).

Entered this 29th day of March, 2024.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE